UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JANE E. MEISSE SHUFORD,

                    Plaintiff,

          -against-

UNITED STATES OF AMERICA,

                    Defendant.
----------------------------------------------------------X

**OPINION & ORDER**
13-CV-6303 (SJF)(AKT)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★    AUG 2 1 2014    ★

LONG ISLAND OFFICE

FEUERSTEIN, District Judge:

I.    Introduction

On or about November 14, 2013, plaintiff Jane E. Meisse Shuford ("plaintiff") filed a complaint against the United States of America ("the government") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671-2681, seeking to recover damages for negligence and medical malpractice. The government now moves pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss this action for lack of subject matter jurisdiction. For the reasons set forth below, defendant's motion is granted to the extent set forth herein.

II.    Background[1]

At all relevant times, plaintiff was employed as a nurse practitioner at the United States Department of Veterans Administration Medical Center ("VAMC") in Northport, New York. On September 19, 2012, while plaintiff was outdoors on VAMC's premises during a lunch break,

---

[1] The following facts are taken from the complaint and the parties' submissions and are assumed to be true for purposes of this motion only. They are undisputed, unless otherwise indicated, and do not constitute findings of fact by the Court.

1

she was stung two (2) times by a bee, as a result of which she suffered an allergic reaction. Plaintiff alleges, *inter alia*, that while being treated by the VAMC emergency room ("ER") staff, Diane Sweeney, a nurse, "injected 1:1000 ml epinephrine by needle directly into [her] bloodstream[,]" (Complaint ["Compl."], ¶ 6), as a result of which she "experienced a burning sensation throughout her entire body, from head to toe, excruciating pain from head to toe, excruciating chest pain, and involuntary movements of the head, hands, feet and other parts of her torso[,] [and] * * * was unable to breathe, had rapidly dropping blood pressure and her pulse could not be palpated and a code alarm was sounded." (Id.) Plaintiff alleges that she "suffered injuries to her heart muscle, was and remains vaso-constricted[;] * * * was in shock, had vertigo and difficulty focusing[;] * * * was sent to the intensive care where her vital signs fluctuated uncontrollably[;] * * * [and] has been psychologically traumatized and remains unable to work." (Compl., ¶ 8).

III. Discussion

    A. Standard of Review

"Federal courts are courts of limited jurisdiction," Gunn v. Minton, — U.S. —, 133 S. Ct. 1059, 1064, 185 L. Ed. 2d 72 (2013) (quoting Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)); see also Mims v. Arrow Financial Services, LLC, — U.S. —, 132 S. Ct. 740, 747, 181 L. Ed. 2d 881 (2012), and may not preside over cases absent subject matter jurisdiction. See Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 552, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005) (holding that federal courts may not exercise jurisdiction absent a statutory basis); Kokkonen, 511 U.S. at 377, 114 S.

Ct. 1673 (holding that federal courts "possess only that power authorized by Constitution and statute * * *.") Lack of subject matter jurisdiction cannot be waived or forfeited and may be raised at any time by a party or by the court *sua sponte*. See Gonzalez v. Thaler, — U.S. —, 132 S. Ct. 641, 648, 181 L. Ed. 2d 619 (2012); see also Sebelius v. Auburn Regional Medical Center, — U.S. —, 133 S. Ct. 817, 824, 184 L. Ed. 2d 627 (2013) ("Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy."); Henderson ex rel. Henderson v. Shinseki, — U.S. —, 131 S. Ct. 1197, 1202, 179 L. Ed. 2d 159 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press. * * * Objections to subject-matter jurisdiction * * * may be raised at any time.") If a court lacks subject matter jurisdiction, it must dismiss the action. See Fed. R. Civ. P. 12(h)(3); Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006); Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62-3 (2d Cir. 2009).

B. The FTCA

"The United States, as sovereign, is immune from suit save as it consents to be sued. . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." Hercules Inc. v. United States, 516 U.S. 417, 422-23, 116 S. Ct. 981, 134 L. Ed. 2d 47 (1996) (quotations, brackets and citation omitted); see also AmBase Corp. v. United States, 731 F.3d 109, 118 (2d Cir. 2013) (accord). "The FTCA * * * was designed primarily to remove the sovereign immunity of the United States from suits in tort[,]" Levin v. United States, — U.S. —,

133 S. Ct. 1224, 1228, 185 L. Ed. 2d 343 (2013) (quotations and citation omitted), and "gives federal district courts exclusive jurisdiction over claims against the United States for '* * * personal injury or death caused by the negligent or wrongful act or omission' of federal employees acting within the scope of their employment." Id. (quoting 28 U.S.C. § 1346(b)(1)[2]); see also Mathirampuzha v. Potter, 548 F.3d 70, 80 (2d Cir. 2008) ("The FTCA waives the sovereign immunity of the United States for certain torts committed by federal employees * * * within the scope of their employment."); Celestine v. Mount Vernon Neighborhood Health Center, 403 F.3d 76, 80 (2d Cir. 2005) ("The FTCA waives the United States's sovereign immunity for certain classes of torts claims and provides that the federal district courts shall have exclusive jurisdiction over damages claims against the United States for * * * personal injury or death 'caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" (quoting 28 U.S.C. § 1346(b)(1))). Specifically, the FTCA waives the United States's sovereign immunity for, *inter alia*, medical malpractice claims based upon negligence. See Levin, — U.S. —, 133 S. Ct. at 1231 ("[M]edical malpractice claims may be based on negligence, in which case the FTCA's waiver of the Government's sovereign immunity is not in doubt.")

"When the tort victim is also a federal employee, however, work-related injuries are compensable only under FECA [the Federal Employees' Compensation Act ("FECA"), 5 U.S.C.

---

[2] Section 1346(b)(1) provides, in relevant part: "Subject to the provisions of chapter 171 of this title, the district courts, * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, * * * for * * * personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

§ 8101, *et seq.*]." Mathirampuzha, 548 F.3d at 80; see 5 U.S.C. § 8116(c)[3]; Hightower v. United States, 205 F. Supp. 2d 146, 151 (S.D.N.Y. 2002) ("FECA provides the exclusive remedy against the federal government for work-related injuries sustained by federal employees."); Doe v. United States, 914 F. Supp. 945, 948-49 (W.D.N.Y. 1996) (accord). "As the Supreme Court has explained:

> FECA's exclusive liability provision... was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that have been enacted to waive the Government's sovereign immunity. In enacting this provision, Congress adopted the principal compromise-the 'quid pro quo'-commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government."

Mathirampuzha, at 80-81 (quoting Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 193-94, 103 S. Ct. 1033, 74 L. Ed. 2d 911 (1983)).

"Congress has vested the Secretary of Labor or her delegate with exclusive authority to 'administer[] and decide all questions arising under' the FECA, 5 U.S.C. § 8145[4], and federal courts are barred from exercising judicial review over such decisions, id. § 8128(b)[5]."

---

[3] Section 8116(c) provides, in pertinent part: "The liability of the United States * * * under this subchapter * * * with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States * * * to the employee * * *, in a civil action * * * under a Federal tort liability statute."

[4] Section 8145 provides: "The Secretary of Labor shall administer, and decide all questions arising under, this subchapter. He may– (1) appoint employees to administer this subchapter; and (2) delegate to any employee of the Department of Labor any of the powers conferred on him by this subchapter."

[5] Section 8128(b) provides: "The action of the Secretary or his designee in allowing or denying a payment under this subchapter is– (1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise."

5

Mathirampuzha, 548 F.3d at 81; see also Hightower, 205 F. Supp. 2d at 152 ("The Secretary of Labor has the sole discretion to decide whether a particular injury is compensable under FECA." (quotations and citation omitted)). "Because the FECA is an 'exclusive' remedy, id. § 8116(c), it deprives federal courts of subject-matter jurisdiction to adjudicate claims brought under the FTCA for workplace injuries that are covered by the FECA." Mathirampuzha, 548 F.3d at 81; see also Hightower, 205 F. Supp. 2d at 150 ("Where FECA applies, federal courts have no jurisdiction to entertain FTCA claims asserted by an injured federal employee[.]")

"[W]here there is a substantial question of FECA coverage-indeed, unless it is certain that the FECA does not cover the type of claim at issue-the district court may not entertain the FTCA claim." Mathirampuzha, 548 F.3d at 81. "If there is a substantial question of FECA coverage, only the Secretary of Labor or her delegate may decide whether the FECA applies." Id.; see also Hightower, 205 F. Supp. 2d at 152 ("[W]hen there is a substantial question of FECA coverage, for example, whether an injury occurred while in the performance of duty, district courts will stay their proceedings pending a decision by the Secretary of Labor.") "If the Secretary determines that the plaintiff's claim is fundamentally outside the scope of the FECA, then the claim may proceed under the FTCA in district court." Mathirampuzha, 548 F.3d at 81 "Conversely, 'the courts have no jurisdiction over FTCA claims where the Secretary determines that FECA applies.'" Id. at 81-82 (quoting Southwest Marine, Inc. v. Gizoni, 502 U.S. 81, 90, 112 S. Ct. 486, 116 L. Ed. 2d 405 (1991)). In sum, Congress, in enacting the FECA, limited its waiver of sovereign immunity in the FTCA by vesting exclusive jurisdiction over certain tort claims by federal employees against their employer in the Secretary of Labor. See Mathirampuzha, 548 F.3d at 82 ("Congress may limit its waiver of sovereign immunity by vesting exclusive jurisdiction over certain claims against the government in administrative agencies."); Coffey v.

6

United States, 939 F. Supp. 185, 189 (E.D.N.Y. 1996) ("The United States retains its immunity from tort actions brought by federal employees for work related injuries through the exclusive liability provisions of the [FECA]."); Scalia v. United States, 475 F. Supp. 1040, 1042 (S.D.N.Y. 1979) ("One significant limitation [of the FTCA's waiver of sovereign immunity] is contained in FECA which expressly states that any illness or injury for which compensation is provided by FECA may not be the subject of a suit under the [FTCA].") Since "liability under the FECA is exclusive, [federal court] subject-matter jurisdiction ends where FECA coverage begins." Mathirampuzha, 548 F.3d at 82; see also Doe, 914 F. Supp. at 949 ("Where FECA applies, the federal courts have no jurisdiction to entertain FTCA claims asserted by injured parties.")

Nonetheless, "the mere existence of a substantial question of FECA coverage" does not necessarily deprive a federal court "of subject-matter jurisdiction over FTCA claims." Mathirampuzha, 548 F.3d at 83. "FECA liability is exclusive, 5 U.S.C. § 8116(c), but the FTCA is an unambiguous waiver of sovereign immunity where the FECA does not apply." Id. "Therefore, although district courts must permit the Secretary of Labor to determine whether the FECA applies whenever an FTCA claims raises a substantial question of FECA coverage, the courts do not immediately lose subject-matter jurisdiction over the case." Id. District courts retain subject matter jurisdiction over the cause until the Secretary makes a determination that FECA applies. See id. ("The courts have no jurisdiction over FTCA claims where the Secretary determines that FECA applies. * * * Even in situations where the district court deems it highly unlikely that the claim falls outside the scope of the FECA, subject-matter jurisdiction over the case remains with the court until the Secretary has made that determination." (quotations, brackets, emphasis and citation omitted)).

7

a. Substantial Question of FECA Coverage

Unless it is clear that the FECA does not cover plaintiff's claims, there is a substantial question of FECA coverage. See, e.g. Coffey, 939 F. Supp. at 190 ("In order to avoid sending the case to the Secretary of Labor, [courts] must essentially decide as a matter of law that, viewing all of the circumstances, the Secretary could not find FECA coverage of the claim. * * * [A] substantial question of FECA coverage exists unless it is certain that the Secretary of Labor would find no coverage." (quotations, brackets and citations omitted)); Doe, 914 F. Supp. at 949 ("Only where the Secretary has made no decision, and there is no substantial question as to the applicability of FECA, should the court render a judgment. * * * A substantial question exists unless it is certain that the Secretary would not find coverage." (quotations, emphasis and citations omitted)); D'Angelo v. United States, 588 F. Supp. 9, 11 (W.D.N.Y. 1983) (accord).

With exceptions not relevant here, FECA provides compensation for personal injuries sustained by a federal employee "while in the performance of his duty." 5 U.S.C. § 8102. "[C]ourts have consistently read the phrase 'in the performance of his * * * duty' to mean 'arising out of or in the course of employment.'" Taber v. Maine, 67 F.3d 1029, 1050 n. 21 (2d Cir. 1995). Decisions from the Employees' Compensation Appeals Board ("ECAB")[6] consistently hold that "[a]rising out of the employment' tests the causal connection between the

---

[6] The Secretary of Labor delegated the authority to administer programs under FECA to the Director of the Office of Workers' Compensation Programs ("OWCP"), "except 5 U.S.C. § 8149 as it pertains to the [ECAB]." 20 C.F.R. § 1.2. Section 8149 provides, in relevant part, that the rules and regulations prescribed by the Secretary of Labor for the administration and enforcement of FECA "shall provide for an Employees' Compensation Appeals Board of three individuals designated or appointed by the Secretary with authority to hear and, subject to applicable law and the rules and regulations of the Secretary, make final decisions on appeals taken from determinations and awards with respect to claims of employees." The ECAB "has jurisdiction to consider and decide appeals from final decisions of OWCP in any case arising under the FECA." 20 C.F.R. § 501.2(c).

8

employment and the injury; 'arising in the course of employment' relates to the time, place and work activity involved." In re Paylor, 57 E.C.A.B. 568, 2006 WL 1993587 (E.C.A.B. 2006); see also In re Knispel, 56 E.C.A.B. 639, 642, 2005 WL 6108980 (E.C.A.B. 2005); In re Greene, 52 E.C.A.B. 367, 368, 2001 WL 913091 (E.C.A.B. 2001); In re Minter, 52 E.C.A.B. 127, 129, 2000 WL 1880051 (E.C.A.B. 2000); In re Battista, 50 E.C.A.B. 343, 345, 1999 WL 1483965 (E.C.A.B. 1999); In re Jackson, 49 E.C.A.B. 486, 488, 1998 WL 1296907 (E.C.A.B. 1998).

i. Arising in the Course of Employment

"To arise in the course of employment, an injury must occur: (1) at a time when the employee may reasonably be said to be engaged in his master's business; (2) at a place where he may reasonably be expected to be in connection with his employment; and [sic] (3) while he was reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto; and (4) when it is the result of a risk involved in the employment or the risk is incidental to the employment or to the conditions under which the employment is performed." In re Knispel, 56 E.C.A.B. at 642; see also In re Greene, 52 E.C.A.B. at 368; In re Battista, 50 E.C.A.B. at 345; In re Jackson, 49 E.C.A.B. at 488; In re Lyons, 49 E.C.A.B. 295, 295, 1998 WL 1295927 (E.C.A.B. 1998); In re Howell, 48 E.C.A.B. 414, 416, 1997 WL 1432810 (E.C.A.B. 1997). Although, under FECA, "an injury sustained by an employee having fixed hours and place of work while going to or coming from work is generally not compensable because it does not occur in the performance of duty[,]" In re Knispel, 56 E.C.A.B. at 642, an "exception almost universally recognized is the premises rule: an employee going to or coming from work before or after working hours *or at lunch, while on the premises of the employer*, is compensable." Id. at 642-43 (emphasis added); see also In re Battista, 50 E.C.A.B. at 345 (holding that the ECAB

"has accepted the general rule of workers' compensation law that, as to employees having fixed hours and places of work, injuries occurring on the premises of the employing establishment, while the employee is going to or from work, before or after working hours, or *at lunch time*, are compensable." (emphasis added)); In re Jackson, 49 E.C.A.B. at 488-89 (accord). Moreover, "work-connected activity goes beyond the direct services performed for the employer and includes at least some ministration to the personal comfort and human wants of the employee." In re Greene, 52 E.C.A.B. at 369; see also In re Debski, 44 E.C.A.B. 381, 1993 WL 796158, at * 6 (E.C.A.B. 1993) (accord). "Activities encompassing personal acts for the employee's comfort, health, convenience and relaxation; *eating meals, lunches and snacks on the premises*, including established coffee breaks; and the employee's presence on the premises for a reasonable time before or after specific working hours, are reasonably incidental to employment and are, therefore, in the course of employment." In re Greene, 52 E.C.A.B. at 369 (emphasis added); see also In re Debski, 1993 WL 796158, at * 6 (accord). "Even if the activity cannot be said in any sense to advance the employer's interest, it may still be in the course of employment if, in view of the nature of the employment environment, the characteristics of human nature, and the customs or practices of the particular employment, the activity is in fact an inherent part of the conditions of that employment." In re Debski, 1993 WL 796158, at * 6.

"With regard to recreational or social activities, the [ECAB] has held that such activities arise in the course of employment when: (1) They occur on the premises during a lunch or recreational period as a regular incident of the employment; or (2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the service of the employee, brings the activity within the orbit of employment; or (3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and

10

morale that is common to all kinds of recreation and social life." In re Paylor, 57 E.C.A.B. at 571 (quotations and citation omitted); see also In re Minter, 52 E.C.A.B. at 129-30; In re Pico, 46 E.C.A.B. 750, 751, 1995 WL 944350 (E.C.A.B. 1995); In re Daniel, 46 E.C.A.B. 203, 205, 1994 WL 932072 (E.C.A.B. 1994). "[T]hese are distinct criteria * * * [and] three independent links . . . by which recreation can be tied to the employment and if one is found the absence of the others is not fatal." In re Minter, 52 E.C.A.B. at 130; see also In re Daniel, 46 E.C.A.B. at 206. "Accordingly, when an employee is injured in a recreational activity, he or she must meet one of these three tests to establish performance of duty." In re Daniel, 46 E.C.A.B. at 206.

ii. Arising out of Employment

A finding that an injury arose in the course of employment "alone is insufficient to establish entitlement to benefits for compensability [under the FECA]." In re Knispel, 56 E.C.A.B. at 642; see also In re Battista, 50 E.C.A.B. at 345; In re Howell, 48 E.C.A.B. at 416. "The concomitant requirement o[f] an injury 'arising out of the employment' must be shown and this encompasses not only the work setting, but also a causal concept that the employment caused the injury[,]" In re Knispel, 56 E.C.A.B. at 642; see also In re Battista, 50 E.C.A.B. at 345 ("'Arising out of employment' requires that a factor of employment caused the injury"); In re Richard, 49 E.C.A.B. 337, 339-40 1998 WL 1295980 (E.C.A.B. 1998)(accord), i.e., that the injury "resulted from some risk incidental to the employment." In re Jackson, 49 E.C.A.B. at 489; see also In re Howell, 48 E.C.A.B. at 416. "In order for an injury to be considered as arising out of the employment, the facts of the case must show that substantial employer benefit is derived or an employment requirement gave rise to the injury." In re Knispel, 56 E.C.A.B. at 642; see also In re Jackson, 49 E.C.A.B. at 489; In re Lyons, 49 E.C.A.B. at 298. But see In re

11

Henderson, 46 E.C.A.B. 441, 444, 1995 WL 944372 (E.C.A.B. 1995) ("Although the incident here occurred on the employment premises, it did not occur during the regular work shift during a lunch or recreation period as a regular incident of employment. Some substantial employer benefit or an employer requirement must be shown, therefore, in order to consider the activity involved here arising out of the employment."); In re Redmond, 45 E.C.A.B. 298, 303, 1994 WL 911238 (E.C.A.B. 1994) (accord).

### iii. Medical Malpractice

"[W]here a federal employee's injury is sustained 'while in the performance of his duty,' 5 U.S.C. § 8102, subsequent aggravation of the injury caused by medical malpractice is compensable under FECA * * *." Votteler v. United States, 904 F.2d 128, 129-30 (2d Cir. 1990); see also Scalia, 475 F. Supp. at 1042 (holding that FECA "coverage clearly extends to situations in which an initial work-related injury is aggravated by negligence or medical malpractice of a physician or other government employee [who] provided treatment or care under FECA.")

Since plaintiff's initial injury, i.e., her allergic reaction to the bee stings, occurred during her lunch break upon the premises of her employer as a regular incident of her employment, and she received treatment in the VAMC ER due to her employment activities there, which allegedly aggravated her injury as a result of the ER staff's purported negligence or medical malpractice, her tort claims against the government raise a substantial question of FECA coverage "and the Secretary of Labor must be afforded an opportunity to determine the plaintiff's rights under the [FECA]." Coffey, 939 F. Supp. at 190. Nonetheless, since the Secretary of Labor has not yet determined that plaintiff's claims are covered by the FECA, "the event that would have divested

[this] [C]ourt of jurisdiction," Mathirampuzha, 548 F.3d at 84, has not occurred. Therefore, it would be premature to dismiss this action for lack of subject matter jurisdiction at this juncture. Accordingly, the government's motion is granted only to the extent that this case is administratively closed with leave to reopen **within thirty (30) days of a determination by the Secretary or his designee that plaintiff's claims are not covered by the FECA**[7]. See, e.g. id. ("The proper course was * * * to stay the proceedings, hold the claim in abeyance, or otherwise maintain the case on the court's inactive docket so that the plaintiff could file a FECA claim and await a determination by the Secretary regarding FECA coverage.")

III. Conclusion

For the reasons set forth above, defendant's motion is granted to the extent that this case is administratively closed with leave to reopen **within thirty (30) days of a determination by the Secretary or his designee that plaintiff's claims are not covered by the FECA** The Clerk of the Court shall close this case.

**SO ORDERED.**

s/ Sandra J. Feuerstein
_____
Sandra J. Feuerstein
United States District Judge

Dated: August 21, 2014
Central Islip, New York

---

[7] Since, as set forth herein, any determination by the Secretary or his designee that plaintiff's claims are covered by the FECA will divest this Court of subject matter jurisdiction over this action, plaintiff should not seek leave to reopen this case in the event that that is the Secretary's determination.

13